UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| METROPCS, a brand of T-Mobile USA, Inc., a Delaware Corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-0442-B |
| PC-WIZ CORP, ET AL., | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are: (1) Defendants' FRCP 55(c) Motion to Set Aside Default (Doc. 35) [hereinafter Defs.' Mot. to Set Aside] and (2) Plaintiff's Motion for Default Final Judgment and Permanent Injunction (Doc. 28) [hereinafter Mot. for Default J.] For the following reasons the Court **GRANTS** Defendants' Motion (Doc. 35), and **DENIES without prejudice** Plaintiff's Motion (Doc. 28).

## I.

## BACKGROUND

Plaintiff T-Mobile USA, Inc. (T-Mobile), a Delaware corporation, for itself and its MetroPCS brand (collectively MetroPCS or Plaintiff) brought the above-captioned lawsuit against Defendants PC-Wiz Corp. (PC-Wiz); Adham Othman a/k/a Adham Adhamhamid Othman a/k/a Adham Jacob Othman a/k/a Adham Abdelhamid Othman a/k/a Adham D. Otham (Adham); Louai Othman a/k/a Louai Abdelhamied Othman (Louai); Omar Othman a/k/a Omar Abdelhamed Othman a/k/a Omanabdelh Othman (Omar); Abdelhamid Abdallah Othman a/k/a Abdelhamid Othman a/k/a/

Tamam Abdallah Othman, Sr. a/k/a Abdelhamid Abdallah Hamid a/k/a Abdelhamid Abdul Abdallah-Othman, Sr. a/k/a Abdel Hamid Othman a/k/a Abdelhamid Abdallah Hamid A., Sr. a/k/a Abdelhamid Abdul Othman Abdallah a/k/a Abdelhamid Abdul A. Othman a/k/a Abdel Hamid A. Othman (Abdelhamid); and Abdalgader Othman a/k/a Abed Othman (Abed).

This case involves the resale of MetroPCS wireless handsets (Handsets) by five individuals and one corporation. Doc. 1, Compl. ¶ 1. As part of T-Mobile's business model, it purchases MetroPCS Handsets from manufacturers at a higher cost than what they eventually charge their customers. *Id.* ¶ 24. T-Mobile can afford to do this because the reduced-cost MetroPCS Handsets only work on the MetroPCS wireless network; so in order to use a reduced-cost MetroPCS Handset, a customer must also pay for the MetroPCS wireless service. *Id.* Customers of other telecommunications carriers must pay full price for the Handsets. *Id.*

Plaintiff alleges that Defendants took advantage of T-Mobile's business model by acquiring MetroPCS Handsets at the reduced cost and selling them for a profit to be shipped overseas where they can be used on foreign carriers' networks. *Id.* ¶ 33. In order to enable the Handsets' use on other carriers' networks, Plaintiff alleges that Defendants wrongfully "unlock" or hack the software restricting access to other wireless carriers. *Id.*

From these allegations, Plaintiff brings a multitude of claims including unfair competition, tortious interference with business and contractual relations, unjust enrichment, fraud, conspiracy to commit fraud and fraudulent misrepresentation, violations of the Computer Fraud and Abuse Act, violations of the Lanham Act, and conversion. *Id.* ¶¶ 56–194.

Plaintiff served all six Defendants, and their answers were due between March 31, 2016 and May 13, 2016. None of the Defendants filed an answer or any responsive pleading, so Plaintiff

requested the Clerk to issue a Clerk's Default as to each Defendant. Docs. 12, 19, 20, 21, 23, 25, Request for Clerk to issue Clerk's Default. The Clerk then entered Default as to each Defendant by May 2016. Docs. 13, 22, 24, 26, Clerks Entry of Default. Plaintiff filed its Motion for Default Judgment against all Defendants. Doc. 28, Mot. for Default J.

After Plaintiff filed its Motion for Default Judgment, five of the six Defendants—PC-Wiz, Adham, Louai, Omar, and Abdelhamid—filed an Answer. Doc. 30, Defs.' Answer. These five Defendants then filed a Motion to Set Aside Default (Doc. 35), and Plaintiff filed a Response (Doc. 37). The remaining Defendant, Abed, has yet to appear in the action. The Motions are ripe, so the Court will first address Defendants' Motion to Set Aside Default before turning to Plaintiff's Motion for Default Judgment.

## II.

## ANALYSIS

A.   *Motion to Set Aside Clerk's Entry of Default*

1.   Legal Standard

Under Rule 55(c) of the Federal Rules of Civil Procedure, a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).

To determine whether a defendant has shown good cause for a Rule 55(c) motion, a court should consider the following factors: (1) whether the default was willful; (2) whether the plaintiff would be prejudiced; and (3) whether the defendant presents a meritorious defense. *Id.* The court is not required to consider all of these factors, and other factors may be considered as well. *CJC*

*Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). These factors are not exclusive; instead, they are to be regarded as a means to identify good cause. *Dierschke*, 975 F.2d at 184.

The Court favors resolving actions on the merits and therefore will resolve any doubts in favor of Defendants. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (observing that "federal courts should not be agnostic with respect to the entry of default judgments which are 'generally disfavored in the law'") (internal citation omitted); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) ("where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits").

    2.    <u>Application</u>

        i.    *Willfulness*

First, in determining whether a default is willful, the court considers whether there has been excusable neglect. *CJC Holdings*, 979 F.2d at 64. Excusable neglect is an "'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Coleman v. Bank of New York Mellon*, 3:12-cv-4783-M-BH, 2015 WL 5437661, at *2 (N.D. Tex. Aug. 14, 2015) (quoting *Pioneer Inv. Servs. Co. V. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). The term extends to "simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer*, 507 U.S. at 388. Excusable neglect has been found to include late filings due to "mistake, inadvertence or carelessness and not to bad faith." *Mattress Giant Corp. v. Motor Advert. & Design Inc.,* No. 3:07-cv-1728-D, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008). On the other hand, an "'intentional failure' to respond to litigation" is not excusable neglect. *See In re OCA, Inc.*, 551 F.3d 359, 370 n.32 (5th Cir. 2008) (quoting *Lacy*, 227 F.3d at 292).

Defendants argue that their failure to timely respond is a result of miscommunication among themselves, confusion about deadlines, and reliance on one Defendant to coordinate with counsel.[1] Regarding miscommunication, Defendants state:

> With three brothers, their father, and a cousin living at 4 separate addresses, as well as two fully independent corporations operating in the same industry by men related but not working for the benefit of the other corporation, the confusion and repeated miscommunication between Plaintiff[s], counsel for movants, and [D]efendants is unsurprising.

Doc. 36, Defs.' Mot. to Set Aside 6. On top of living at separate addresses, Defendants further blame their miscommunication on Plaintiff effecting service on different days because it caused Defendants to have different deadlines for filing a response. *Id.* at 7. Multiple deadlines evidently created too many moving parts to effectively secure counsel and respond to Plaintiff's Complaint on time. *See id.* Defendants also criticize Plaintiff's efforts to contact Defendants as "slapdash" and haphazard. *Id.* at 6–7.

Besides miscommunication, Defendants also contend that they mistakenly relied on both Adham and counsel to timely respond. *Id.* at 7. Adham allegedly took charge of Defendants' participation because he obtained counsel and assured his father and brothers that things were "taken care of." *Id.*[2] Even though Adham evidently obtained counsel for Defendants, counsel failed to coordinate a timely response "[d]ue to a clerical error within the firm." *Id.* It is unclear, though,

---

[1] While Defendants devote a section of their Motion arguing that their actions amounted to excusable neglect, the section is simply a compilation of rules; Defendants fail to make any assertion as to their specific behavior. *See* Doc. 35, Defs.' Mot. to Set Aside 10–11. This deficiency is not fatal, however, as Defendants make assertions elsewhere in their Motion that the Court construes as arguments for excusable neglect.

[2] In Defendants' attached Affidavits, only Louai mentions Adham's statement, and Louai asserts that immediately after he was served, Adham told the family that he was taking care of the suit. Doc. 36, Louai Aff. ¶¶ 15, 16. Louai notes, however, that after the Clerk made entries of default, he took the position of leadership in the case. Id. ¶ 16.

when specifically Adham obtained counsel.[3] Louai notes in his Affidavit that after the Clerk entered

default as to each Defendant in May 2016, he "immediately took action" by meeting with counsel

because he realized the "misunderstanding" Adham said was "taken care of" had not been resolved.

Doc. 36, Louai Aff. ¶¶ 15, 16.

In response, Plaintiff rejects Defendants' characterization of their failure to answer as an

"innocent mistake." Doc. 37, Pls.' Resp. 2. Plaintiff argues that Defendants' actions were not a result

of excusable neglect, but rather the result of a mistaken presumption that ignoring the case would

force MetroPCS to abandon the suit. *Id.* Plaintiff specifically refutes Defendants' points about

miscommunication and wrongfully relying on counsel because Defendants were required to educate

themselves on litigation obligations and timely file a response, with or without counsel. *Id.* at 10.

The Court concludes that this factor weighs in favor of lifting the entries of default against

Louai, Omar, Abdelhamid, and PC-Wiz Corp,[4] but it weighs slightly against lifting the entry of

default as to Adham. The Fifth Circuit addressed excusable neglect where three defendants, all in

the same family, were sued, and two defendants relied on the third when he assured them that he

was working with the lawyers and had their interests protected. *Scott v. Carpanzano*, 556 F. App'x

288, 295 (5th Cir. 2014). The Fifth Circuit found that reliance on the third defendant's

---

[3] Defendants' Motion does not state when counsel was obtained, but it appears that it was sometime after Adham was served in March 2016 and before June 2016 when counsel reached out to Plaintiff to instigate settlement negotiations. Doc. 36, Defs.' Mot. to Set Aside 7. This matters to the extent that counsel's error caused Defendants' failure to answer before the deadlines in March 2016 and May 2016. Any delay caused by counsel following those deadlines does not factor into the Court's willfulness analysis. As an aside, the Court sees the contention that Defendants' counsel "[m]istakenly believed settlement negotiations to be sufficient to prevent final default" as problematic. *Id.* It appears that counsel had full knowledge that default could be entered against his clients by June, but Defendants did not file an answer until September.

[4] While PC-Wiz Corp. is not mentioned specifically in Defendants' Motion, the Court is treating it similarly to Louai, Omar, and Abdelhamid because they are the three individuals officially associated with the organization. Doc. 35, Defs.' Mot. to Set Aside 2–3.

representation amounted to excusable neglect rather than willful behavior when the third defendant failed to answer the plaintiff's complaint. *Id.* Similarly, it appears that Adham assured his brothers and father that everything was "taken care of," and at least Louai relied on that statement. As the defendants in *Scott* were negligent, rather than willful in responding, it appears that Louai, and possibly Omar and Abdelhamid were simply negligent in this case as well.

Besides misplaced reliance, it appears that there is evidence of miscommunication and evidence of counsel's mistake. Because the Court has not entered default judgment against Defendants and is only considering lifting the clerk's entry of default, the Fifth Circuit's preference for a trial on the merits factors heavily into the Court's analysis. Therefore, the miscommunications and counsel's potential role in the default favors lifting the default as to all Defendants. While Adham exhibited some behavior that could be construed as more than excusable neglect—seeing as he evidently had full knowledge of the suit upon being served, took responsibility for the suit, and failed to answer—the Court will continue to consider Adham in its analysis with the understanding that miscommunication and counsel error could have played into his failure to respond.[5]

     *ii.*    *Prejudice to Plaintiff*

With respect to the second factor in determining good cause, the Court finds that the prejudice to Plaintiff weighs in favor of setting aside the default as to all Defendants. Defendants argue that Plaintiff will not suffer any prejudice; rather, Defendants, themselves, will suffer prejudice by not being able to defend the claims. Doc. 35, Defs.' Mot. to Set Aside 11. Prejudice to defendants

---

[5] Even if the Court did find Adham to have acted willfully, judges within the Northern District of Texas "have set aside an entry of default where other factors weighed in favor of the defendant and, on balance, the defendant otherwise met the good cause standard" even when the defendant had acted wilfully. *See Alfarouqi v. Tri-Speed Inv., Inc.*, 3:12-CV-3836-L, 2013 WL 5314436, at *4 (N.D. Tex. Sept. 23, 2013); *In re Dierschke*, 975 F.2d at 184–85.

is not the focus of the inquiry, but Defendants do argue that the only prejudice to Plaintiff is the requirement to now prove its case. *Id.* at 11. Defendants also point out the size of Plaintiff's organization and state that it has access to "a bevy of attorneys to pursue legal matters on its behalf." *Id.* at 12. Plaintiff argues that it is prejudiced by Defendants' absence because no discovery has been conducted, it has suffered financial loss from litigating the case to obtain a default judgment, and the evidence and witnesses have dissipated in the intervening period. Doc. 37, Pls.' Resp. 13.

While the delay is unfortunate, prejudice to the plaintiff must involve more than the mere possibility of prejudice from delay inherent in every case. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985). Requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default to stand. *See United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985). Thus, because it appears to the Court that the only harm Plaintiff has suffered is having to wait to litigate the merits of the claim, this factor weighs in favor of lifting the entries of default as to all Defendants.

### iii.    *Defendants' Meritorious Defense*

Third, the Court turns to whether Defendants have asserted a meritorious defense. To succeed in setting aside the default, Defendant must establish that it has a fair probability of success on the merits of its defense. *Fed. Sav. & Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir. 1998). A defendant must make "a clear and specific statement showing, not by conclusion, but by definite recitation of facts . . . that there was a valid defense" to the claims. *Moldwood Corp. v. Strutts*, 410 F.2d 351, 352 (5th Cir. 1969). In determining whether a meritorious defense exists, the underlying concern is "whether there is some possibility that the outcome of the suit after a full trial

will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d at 373 (citation and internal quotation marks omitted).

Defendants do not argue that there is any specific meritorious defense that would apply in their favor; rather they state they have "been unfairly treated as one nefarious group engaged in conspiracy when their sworn affidavits and other attached evidence shows that to be untrue." Doc. 35, Defs.' Mot. to Set Aside. 12. It appears their only defense is a total denial of Plaintiff's claims against them. Louai, specifically, denies any involvement in selling MetroPCS items.[6] Adham, Omar, and Abdelhamid, on the other hand, assert what appears to be a knowledge-based defense as they claim they had no idea their actions were wrong or broke any rules.[7] Adham, Omar, and Abdelhamid also deny several of Plaintiff's specific allegations, including the allegation that they opened, altered, tampered with the original packaging in which the phones come, or "unlocked" any of them. Doc. 35, Defs.' Mot to Set Aside 5–6. PC-Wiz, as a corporation, is not discussed.

Plaintiff argues that Defendants' arguments are merely a conclusory statements about available meritorious defenses, which is insufficient as a matter of law. Doc. 37, Pls.' Resp. 12. Plaintiff points out that Defendants admit to being principals of PC-Wiz at all times relevant to this lawsuit and trafficking MetroPCS Handsets in bulk. *Id.* This suggests, according to Plaintiff, that the outcome of the lawsuit will not change, even with the application of whatever defense Defendants

---

[6] According to Defendants, "[u]ntil the present lawsuit was well underway, L[ouai] lived in blissful ignorance of the specific products sold," and he "did not have any knowledge of or involvement in any defendants' involvement with MetroPCS products, did not encourage or contribute to such involvement, and has never benefitted financially or otherwise from said involvement." Doc. 35, Defs.' Mot. to Set Aside 4.

[7] As to Omar, Defendants claim that "[u]ntil being sued by Plaintiff, O[mar] had been working hard to build what he believed was a legitimate, wholly legal enterprise with increasing success." Doc. 35, Defs.' Mot. to Set Aside 5. As to Adham, he "was shocked and dismayed to learn that re-selling MetroPCS handsets was problematic or against any rules." *Id.* As to Abdelhamid, he "absolutely and reasonably believed the resale of all products they purchased to be legal and in keeping with activities common to thousands of legitimate US businesses." *Id.*

have in mind.

Because the Court is operating under the Fifth Circuit's flexible standard for setting aside a clerk's entry of default,[8] it concludes that this factor weighs in favor of setting aside the default. Louai's assertion that he had no knowledge, involvement, or benefit from PC-Wiz's alleged activity with MetroPCS products would, if true, likely change the outcome of the suit with regard to Louai. Furthermore, resolving doubt in favor of Defendants, the Court also finds that the other Defendants' rejection of some of Plaintiff' key allegations, including its rejection that they opened the packages in which the phones came, could amount to a different possible outcome in the case on the merits. Because Loaui, Abdelhamid, and Omar's asserted defenses have the possibility to change the outcome of the case, the Court also finds that this factor weighs in favor of setting aside the default as to PC-Wiz as well.

While this is a close case, the Fifth Circuit has adopted a strong policy favoring trying cases on the merits. *See Lacy*, 227 F.3d at 292. Therefore, keeping the Fifth Circuit's policy in mind, Defendants have met their burden of showing that the entry of default should be set aside with regard to all Defendants. Because Abed has yet to appear in the case, the entry of default against him will remain in place.

B.     *Motion for Default Judgment and Permanent Injunction*

Today, the Court has considered five of the six Defendants' Motion to Set Aside Default Judgment. As to those Defendants, the Court has concluded that all five of their entries of default can be set aside. The last Defendant, Abed, has yet to appear in this suit. Therefore the entry of

---

[8] *See Lacy*, 227 F.3d at 292.

default against Abed remains and Plaintiff's Motion for Default Judgment is considered with regard to only Abed.

Pursuant to Federal Rule of Civil Procedure 55, a court may enter a default judgment against a party who has not filed a responsive pleading or otherwise defended a civil action. Fed. R. Civ. P. 55(b)(2). However, federal courts have discretion to grant or deny motions for default judgment. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). Thus, while a defendant may technically be in default, a party is not entitled to a default judgment as a matter of right. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). For example, when default is entered against one defendant in a multi-defendant case, a court may prefer to withhold granting a default judgment until a decision on the merits against the remaining defendants has been entered. *Essex Ins. Co. v. Clark*, 3:09-cv-1196-B (citing *Raleigh Cycle Co. of Am. v. Edward Risha*, No. H-84-522, 1987 WL 11889, at *1 (S.D. Tex. May 27, 1987)). This is especially true where, as here, a default judgment against one of multiple defendants could result in inconsistent or illogical judgments. *Id.*

Because Abed is only one of six Defendants in this action and because Plaintiff does not separate its claims with regard to each defendant, the Court finds an entry of default judgment is not warranted at this time. The Court will delay entering default judgment against Abed until a decision on the merits has been entered with regard to the remaining Defendants. As such, the Court **DENIES** Plaintiff's Motion **without prejudice** pending final judgment on the merits as to the Defendants. Furthermore, because the Court is delaying the entry of default judgment, the Court also **DENIES without prejudice** Plaintiff's Motion for a Permanent Injunction.

IV.

CONCLUSION

For the reasons stated above, the Court finds it appropriate to **GRANT** Defendants' Motion to Set Aside Default. (Doc. 35). Thus, the Court **DIRECTS** the Clerk of Court to **LIFT** the entries of default entered on April 29, 2016 (Doc. 22); May 12, 2016 (Doc. 24); and May 13, 2016 (Doc. 26). The entry of default entered against Abed (Doc. 13) remains in place. Because the case will proceed on the merits against five of the six Defendants, the Court **DENIES** Plaintiff's Motion for Default Judgment (Doc. 28) **without prejudice** pending final judgment on the merits as to the Defendants. For the same reason, the Court **DENIES without prejudice** Plaintiff's Motion for a Permanent Injunction (Doc. 28).

**SO ORDERED.**

**SIGNED: January 13, 2017.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE